# Applicability of 18 U.S.C. § 207(a) to the Union Station Development Corporation

18 U.S.C. § 207(a) does not prohibit a former employee of the District of Columbia government now working for the Union Station Redevelopment Corporation from communicating with the District government concerning matters on which she worked as a District employee, because the Corporation should be regarded as "the United States" for the purposes of that statute.

May 10, 1988

MEMORANDUM OPINION FOR THE DEPUTY DIRECTOR
OFFICE OF GOVERNMENT ETHICS

This responds to your request for the opinion of this Office whether 18 U.S.C. § 207(a) bars a former employee of the District of Columbia government now working for the Union Station Redevelopment Corporation ("USRC") from communicating with the District government in connection with matters on which she worked as a District employee. Section 207(a) prohibits former federal government employees, including employees of the District of Columbia government, from representing "any other person (except the United States)" in matters on which the employee worked as a government employee. For the reasons set forth below, we conclude that section 207(a) poses no bar to the former employee's communicating with the District government because USRC should be regarded as "the United States" for purposes of that statute.

In the past, we have looked to the definition of "agency of the United States" in 18 U.S.C. § 6 to determine if an entity should be regarded as the United States for the purposes of the conflict of interest laws. *See Applicability of 18 U.S.C. § 205 to Union Organizing Activities of Department of Justice Employee*, 5 Op. O.L.C. 194 (1981) (Office of the Architect of the Capitol an agency of the United States for purposes of 18 U.S.C. § 205); Letter for the Secretary of the Army, from Attorney General Clark (Dec. 2, 1948) (Panama Railroad Company an agency of the United States for purposes of the conflict of interest laws). Section 6 provides:

> The term "agency" includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

18 U.S.C. § 6. The legislative history of the provision adds:

> The phrase "corporation in which the United States has a pro-
> prietary interest" is intended to include those governmental cor-
> porations in which stock is not actually issued, as well as those in
> which stock is owned by the United States. It excludes those cor-
> porations in which the interest of the Government is custodial or
> incidental.

H.R. Rep. No. 304, 80th Cong., 1st Sess. A6 (1947) (revisers' notes reprinted in
18 U.S.C. § 6).

Few judicial precedents are available to guide us in interpreting 18 U.S.C.
§ 6, and none of those involve corporations similar to USRC.[1] In his 1948 letter
to the Secretary of the Army, *supra*, the Attorney General concluded that the
Panama Railroad Company was an agency of the United States under 18 U.S.C.
§ 6. Although he did not explain what factors led to that conclusion, an exami-
nation of the status of the Panama Railroad Company in 1948 reveals several rel-
evant considerations. Under the Act of June 29, 1948, 62 Stat. 1075, 1076–80,
the Panama Railroad Company was "an agency and instrumentality of the United
States," funded by congressional appropriations and transfers from other gov-
ernment agencies, with the responsibility for operating a railroad across the
Panamanian Isthmus and for building and maintaining the infrastructure of the
Canal Zone.

More helpful is the discussion of the definition of "agency of the United States"
in this Office's opinion finding the Federal National Mortgage Association
("FNMA") an agency of the United States for the purposes of 18 U.S.C. § 431.
Section 431, another conflict of interest provision, prohibits Members of Con-
gress from entering into contracts with agencies of the United States. In a mem-
orandum for Joseph F. Dolan, Assistant Deputy Attorney General, from Norbert
A. Schlei, Assistant Attorney General, Office of Legal Counsel (Dec. 18, 1963)
("Schlei Memorandum"), we concluded that the status of the FNMA as an agency
of the United States precluded the FNMA's representation by a law firm of which
a Congressman was a member. We examined the charter of the FNMA and de-
termined that it was a "corporation in which the United States has a proprietary
interest." *Id.* at 3. In making this determination we took into account the follow-
ing factors: 1) the corporation was created by federal statute; 2) one of the
FNMA's functions was "to provide Government assistance for certain types of
mortgages"; 3) the FNMA was a mixed-ownership corporation in which the Sec-
retary of the Treasury owned the preferred stock; and 4) the United States exer-
cised substantial control over the FNMA's activities. *Id.* at 4–6.

---

[1] *Compare United States v Allen*, 193 F. Supp. 954, 957 (S D. Cal. 1961) (a federal grand jury is not an agency
of the United States) *with United States v. Stark*, 131 F. Supp. 190, 194 (D. Md. 1955) (the FBI is an agency of the
United States). Neither of these cases suggests any standards that can be used to decide whether a particular cor-
porate entity should be regarded as an "agency of the United States" under the statute.

Based upon these precedents, we believe that USRC should be regarded as an agency of the United States for purposes of title 18 if the interest of the United States in the corporation is "proprietary," but not if the interest of the United States is "custodial or incidental." In making this determination, we look to USRC's functions, financing, control, and management. *Cf. Government Nat'l Mortgage Ass'n v. Terry*, 608 F.2d 614, 618 (5th Cir. 1979).[2]

USRC's functions are those entrusted by Congress to the Department of Transportation in the Union Station Redevelopment Act of 1981, 40 U.S.C. §§ 801–819. Congress anticipated that "a nonprofit, public-private development corporation" could be created to manage the redevelopment of the Union Station complex. S. Rep. No. 269, 97th Cong., 1st Sess. 13 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2711, 2723. USRC "was formed to assist the Secretary in achieving the objectives of the Redevelopment Act and generally to facilitate the redevelopment of the Union Station complex." Union Station Redevelopment Cooperative Agreement at 3 (Nov. 1983) ("Union Station Agreement"). In particular, USRC's responsibilities include selecting and monitoring the developer of the station complex, ensuring that adequate provision is afforded Amtrak for its current and future use of the station, and working with other interested parties in the redevelopment of the station. *Id.* at 6–7. Although these functions presumably could be handled by private enterprise without federal control, that is not an adequate basis for finding that an entity is not an agency of the United States. *See Rauscher*, 789 F.2d at 315. *See also* Schlei Memorandum at 5 (FNMA is an agency of the United States even though it is empowered "to engage in its business activities in a manner comparable to that of private institutions engaged in similar activities"). In this case, Congress assigned USRC's responsibilities to the Department of Transportation. USRC is simply the vehicle created by that Department to accomplish the congressional mandate.

USRC is financed by several sources. Amtrak is obligated to provide up to seventy million dollars to USRC for the redevelopment project. Union Station Agree-

---

[2] *Terry* construed the meaning of "agency" under 28 U.S.C. § 451, which defines "agency" in a manner similar to the definition in 18 U.S.C. § 6. Moreover, the historical and revisions notes of section 451 state that "agency" in section 451 conforms to the definition of "agency" in 18 U.S.C. § 6. Accordingly, the court in *Terry* used the discussion of "proprietary corporation" in the revisers' notes to 18 U.S.C. § 6 to determine if Ginnie Mae should be held an agency of the United States for the purposes of determining federal jurisdiction *See* 608 F.2d at 618–20 (Ginnie Mae is an agency because of the control HUD exercises over Ginnie Mae, the intent of Congress to retain governmental control over the federal housing program, and the funds provided by—and profits returned by Ginnie Mae to—the federal government). *See also Rauscher Pierce Refsnes, Inc. v. FDIC*, 789 F.2d 313, 314–16 (5th Cir. 1986) (FDIC is an agency because of the "important governmental functions" performed by the FDIC, the presence of the Comptroller General and two presidential appointees on the three member board, the authority to issue regulations, and the control by Treasury over the money of the FDIC); *LPR Land Holdings v. Federal Land Bank*, 651 F. Supp. 287, 290 (E.D. Mich. 1987) (a federal land bank is not an agency because being chartered by and regulated by the federal government is not sufficient to make an entity an agency of the United States).

Although title 28 incorporates the definition of agency in title 18, the converse is not true. It is possible that different considerations influence whether an agency should be considered part of the United States for jurisdictional purposes and whether an agency is part of the United States for the purpose of defining a criminal offense. Thus, cases decided under title 28 are not dispositive under title 18, but they are useful in examining the factors that courts have found relevant to deciding whether an entity is an "agency" of the United States.

ment at 8.[3] The Federal Railroad Administration ("FRA"), an agency within the Department of Transportation, was required to provide $340,000 for the operation and maintenance of Union Station between October 1, 1983 and September 30, 1984; the FRA has a continuing obligation to provide financial assistance to USRC to the extent that its funds are available for this purpose. *Id.* at 4–5, 9. The District of Columbia contributes federal highway funds to USRC. Also, any income that USRC earns in the course of its work is to be used "to further project objectives." *Id.* at 11. USRC has no obligation to seek funds from any source. *Id.* at 7.

USRC is managed by a five member board of directors. Two members—the Secretary of Transportation and the Federal Railroad Administrator—are officials of the federal government. A third member—the Mayor of the District of Columbia—has the status of a federal official under the conflicts laws. Another member—the president of Amtrak—represents a mixed-ownership government corporation. *See supra* note 3. The president of the Federal City Council represents a private entity.[4] The day-to-day operations of USRC are handled by a president, a vice-president, two full-time employees, and one part-time employee, although the members of the board of directors also play significant, albeit varying, roles in this regard.[5]

While the question seems to us a close one, on balance we believe that the functions, financing, management and control of USRC make that entity an "agency of the United States" under 18 U.S.C. § 6, and that accordingly it should be considered "the United States" under 18 U.S.C. § 207(a). Our conclusion in this regard is reinforced by the purposes of section 207(a) itself. Several justifications for the restrictions imposed by that section on post-government employment have been advanced: the need to prevent the use of confidential government information for the benefit of a private party, the unseemliness of switching sides, the fear of undue influence over former colleagues, avoidance of pressure on government employees who anticipate future private employment, and protection from the appearance of a conflict of interest. *See, e.g.,* Bayless Manning, *Federal Conflict of Interest Law* 179–81 (1964) (reviewing the legislative history of the predecessor statute to section 207). *See also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 342 (1975). These same dangers are

---

[3] Amtrak is a "mixed-ownership Government corporation." 31 U.S.C § 9101(2)(A). It is not "an agency or establishment of the United States Government." 45 U S C. §§ 541, 581(b)(1). Nonetheless, we have advised that Amtrak is an "agency" for the purposes of the Privacy Act, 5 U.S.C. § 552a, because Amtrak is a "Government controlled corporation" under 5 U.S.C. § 552(e). Letter for William M. Nichols, General Counsel, Office of Management and Budget, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Oct. 7, 1976) Further, more than one-third of Amtrak's total expenses for fiscal year 1987 was funded by congressional appropriations. *See* H R. Rep No. 202, 100th Cong , 1st Sess. 101–02 (1987)

[4] The Federal City Council is a civic organization comprised of prominent Washington residents It essentially operates as a booster group for the city.

[5] The General Counsel of the FRA has daily contact with USRC and is involved in most of the substantive decisions made by the corporation The Federal Railroad Administrator has perhaps weekly contact with the USRC. The other members of the board of directors have less frequent contact with the corporation.

not posed when a government employee moves "from one salaried government position to another." *Id.* at 6. Thus, for example, it would be entirely permissible for an individual to work on the redevelopment of Union Station as an employee of the District of Columbia and then work on the same matter as an employee of the Department of Transportation. We believe that the nature of USRC, as the entity performing the statutory responsibilities of the Department of Transportation for the Union Station project, under the guidance of government officials and with the assistance of federal funding, suggests that the same result should be reached when an individual moves from employment with the District of Columbia to employment with USRC.

In sum, we believe that the exclusively federal functions of USRC, and the significant control over its operations exercised by the federal government, warrant the conclusion that USRC should be considered "the United States" for the purposes of 18 U.S.C. § 207(a). Accordingly, the prohibitions of that section do not apply where a former employee of the District of Columbia accepts employment with USRC.

MICHAEL CARVIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*